**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1089
_____

UNITED STATES OF AMERICA

v.

ROY BREWLEY,
                    Appellant

_____

On Appeal from the
District Court of the Virgin Islands
No. 3-04-cr-00154-003
District Judge:  Honorable James T. Giles

_____

Argued May 3, 2010

Before: SMITH, CHAGARES, and JORDAN, Circuit Judges.

(Filed: June 1, 2010)

_____

Delia L. Smith, Esq. [ARGUED]
Office of United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI, 00802-6924
        *Attorney for Appellee*

Leslie L. Payton, Esq. [ARGUED]
P.O. Box 305272
Charlotte Amalie, St. Thomas

USVI, 00803-0000
    *Attorney for Appellant*

—————————

OPINION

—————————

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Roy Brewley challenges his conviction for conspiracy to possess with intent to distribute cocaine. After Brewley's first trial culminated in a mistrial, the Government retried him and obtained a conviction. Brewley now argues, <u>inter</u> <u>alia</u>, that the Double Jeopardy Clause barred reprosecution because there was no "manifest necessity" for the mistrial. We hold, however, that the reprosecution did not violate the Double Jeopardy Clause. Brewley impliedly consented to the mistrial, and we therefore have no occasion to examine the manifest need for it. We reject Brewley's other claims and will affirm the judgment of conviction.

I.

We write for the parties' benefit and set forth only those facts necessary to resolve the appeal. Brewley was employed as a baggage handler at the Cyril E. King Airport in St. Thomas. In that capacity, he assisted in a smuggling operation designed to import cocaine into the United States mainland. Brewley and eleven of his cohorts were charged in an eleven-count superseding indictment on January 13, 2005. Count One alleged a conspiracy to distribute and/or possess with intent to distribute cocaine, in violation of 21

2

U.S.C. §§ 841(a) and 846. The other ten counts charged substantive counts of possession (and aiding and abetting such possession) with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a), (b)(1) and 18 U.S.C. § 2. Brewley was named in Counts One and Eight of the superseding indictment. He and seven of the named defendants pleaded not guilty and were jointly tried; the other four pleaded guilty and testified at trial.

Trial commenced on November 6, 2006, and the District Court thereafter dismissed Counts Two, Three, Four, and Five. On December 1, 2006, the jury began its deliberations on the remaining counts with respect to the substantive crimes and, if necessary, would consider drug amount separately. On December 5, 2006, the jury sent a note advising that it had "come to a decision on all verdicts, all defendants, all counts." Appendix ("App.") II.4.[1] The District Court questioned the foreperson whether the jury had "reach[ed] a unanimous decision with respect to all counts and all defendants," and the foreperson answered that it had. App. II.5. When asked for the jury's verdict, the foreperson announced "guilty" on each count against each defendant. App. II.5-6. The District Court then conducted a general poll of the jury, and apparently discerned no dissent. App. II.7. It then recorded the verdict and instructed the jury to continue their deliberations on drug amount.

Moments later, the District Judge was informed that Juror Six had asked to speak

---

[1] Citations to the Appendix are referenced by the corresponding volume and page number.

3

with him.  An off-the-record discussion then took place.  App. II.15.  Several moments later, in open court, the District Court individually polled the jury members.  The first five jurors affirmed that they had voted guilty with respect to all defendants and all remaining counts.  App.II.15-28.  Juror Six, however, answered negatively when asked whether the verdict had been unanimous.  She admitted to the District Court that she had signed the verdict sheet but, when she attempted to explain, the District Court cut her off and continued its poll of the other jurors.  App.II.28-29.  Each reaffirmed a guilty vote for each defendant and each count.  App.II.29-39.  Without having learned how the verdict had not been unanimous, the District Court instructed the jury simply to "return to the jury room and report back to me, whether you have a unanimous decision, or you do not."  App. II.39.

At that point, counsel for co-defendant Stefon Wilson objected, asserting that the verdict had not been unanimous and was therefore in violation of Federal Rule of Criminal Procedure 31.  The District Court rebuffed these efforts, reminding counsel that "the jury has reported in writing a unanimous decision."  App.II.39.  After a short break, the District Court put the following on the record:

> This [is] the situation.  There was a report of unanimous decision by the foreperson, guilty as to all counts as to all defendants charged.  There was a general poll of the jury, and my observation was that no one on the jury said no, and that all said yes.  I molded the verdict based upon the report of the jurors, guilty as to all defendants as to all counts.  Subsequently, after the charge to the jury with respect to amount, one of the jurors made it known that the decision was

4

not her individual decision. I've concluded that as a matter of law, the verdict was taken, it was molded, and it was entered[,] and it stands.

App.II.41. During a continuing debate with counsel over the propriety of the verdict, the District Court abruptly decided to question Juror Six as to what she would have answered had it polled her on her individual votes. As the jury was being summoned, counsel for two of Brewley's co-defendants stated that they joined in everything that Wilson's attorney had said, which included a motion for a mistrial. The District Court responded, "I assume all defendants join in." App. II.44. The transcript does not reveal a response from Brewley's counsel. Id.

The District Court polled Juror Six, who affirmed that she had voted guilty with respect to each defendant and each count save Brewley, whom she believed was not guilty. App.II.45-48. Nonetheless, the District Court instructed the jury – over Brewley's objection – to continue its deliberations on drug amount as if it had reached a unanimous verdict as to all defendants, Brewley included. App. II.48.

The next day the District Court instructed the jury to answer a series of interrogatories regarding drug amount. Consistent with the court's instruction the day before, the questions assumed that the jury had reached a unanimous verdict as to all defendants, including Brewley. The District Court explained that it recognized one juror had represented Brewley was not guilty, and that depending on the jurors' answers to the interrogatories, it would pose separate questions addressing that issue. App.III.13-14.

5

These interrogatories thus appear to have been designed (at least in part) as a proxy for gauging whether the jury truly had reached a unanimous verdict as to Brewley's guilt.

The jurors soon returned with answers to the interrogatories. The foreperson indicated that the jury had not been able unanimously to answer the questions as to Counts One and Eight, but had been able to do so with respect to the remaining counts. App. III.19-20. With respect to those remaining counts, the jury unanimously agreed that the Government had proven beyond a reasonable doubt the amounts charged in the superseding indictment. The District Court then instructed the jury to continue to deliberate on the interrogatories with respect to Counts One and Eight, this time with Brewley's name removed. App. III.22. Minutes later, the jury returned with responses. The foreperson indicated that the jury unanimously agreed that the Government had proven beyond a reasonable doubt the drug amount charged in Counts One and Eight when Brewley's name was not considered. App. III.24. The District Court then individually polled the jurors. App. III.25-35. Each juror – including Juror Six – affirmed that, having excluded Brewley from consideration, the defendants charged in Counts One and Eight had conspired to (and did) possess five kilograms or more of cocaine. Id. The net effect was that Juror Six reaffirmed her belief that Brewley was not guilty but that the other defendants were guilty of the charged offenses. Thus, with respect to Brewley's guilt or innocence, an 11-1 split was apparent.

The District Court then dismissed the jury for a moment to consult with counsel.

The following discussion ensued:

| | |
|---|---|
| The Court: | I've reconsidered my position as to Mr. Roy Brewley, and he is declared not guilty by virtue of the responses of the jury. |
| [Defense]: | Thank you, Your Honor. Your Honor, we ask to leave at this point. |
| The Court: | The reason for this is that the jurors were not unanimous with respect to Roy Brewley . . . and accordingly the charges against Mr. Brewley are dismissed. |

App. III.36-37. The court excused Brewley from the courtroom and he and his lawyer left immediately. They did not get far. The Government attorney objected to an outright acquittal, and the court called them back. We quote in full the subsequent discussion:

| | |
|---|---|
| [Government]: | Your Honor, can the government be heard on the Court's ruling as to not guilty regarding Mr. Roy Brewley? |
| The Court: | Oh, I'm sorry. . . . Yes, you may be heard. But first, Mr. Brewley has to return to the Court. |
| [Government]: | Yes, Your Honor. |
| | (Pause) |
| [Defense]: | Judge, you called me? |
| The Court: | Yes, I did. I can't excuse your client and you yet. The |

7

|                  |                                                                                                                                                                                                                                                              |
| ---------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------ |
|                  | government is entitled to argument, and I did not give the government an opportunity.                                                                                                                                                                         |
| [Government]:    | Your Honor, at best, the information received from this panel of jur[ors] is that there were 11 for guilty and . . . one juror for not guilty. This would constitute a mistrial as to those two counts regarding Mr. Roy Brewley, and not a not-guilty verdict. |
| The Court:       | Oh, I'm sorry. Well, you're right.                                                                                                                                                                                                                           |
| [Government]:    | And – okay. So we would like to have the opportunity, Your Honor, to have the issues, those two counts against Mr. Brewley tried before . . . a jury that can [reach a unanimous verdict].                                                                     |
| The Court:       | Okay, okay. . . . Under law, I can't dismiss the charges against your client. I can declare a mistrial as to your client. And I declare a mistrial as to your client.                                                                                          |
| [Defense]:       | We liked your earlier decision, Your Honor.                                                                                                                                                                                                                  |
| The Court:       | Pardon?                                                                                                                                                                                                                                                       |
| [Defense]:       | We liked your earlier decision.                                                                                                                                                                                                                              |
| The Court:       | I'm sorry, sir, but I'm not the Supreme Court. But mistrial is declared as to your client, and your client is subject to trial.                                                                                                                               |

8

| [Defense]: | Yes, Your Honor.  Can we be excused? |
| --- | --- |
| The Court: | Yes, sir, you may. |
| [Defense]: | Thank you. |

App. III.37.39.  The District Court then went on to address other matters with the remaining defendants for approximately forty-five minutes.  App. III.39-71.

Brewley was retried in November 2007 and was convicted of conspiracy, but acquitted of possession.  The District Court sentenced him to 120 months in prison, and this appeal followed.[2]

## II.

The Double Jeopardy Clause "forbids that 'any person be subject for the same offence to be twice put in jeopardy of life or limb.'"  United States v. Rivera, 384 F.3d 49, 53 (3d Cir. 2004) (quoting U.S. Const. amend. V).  Relevant here, it protects "a defendant's valued right to have his trial completed by a particular tribunal."  Wade v. Hunter, 336 U.S. 684, 689 (1949).  But that right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."  Id. One such instance is when "manifest necessity" requires that a mistrial be declared before the verdict is given.  "[T]he classic basis for a proper mistrial," in turn, is a deadlocked jury.  Arizona v. Washington, 434 U.S. 497, 509 (1978); see also United

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a).  We have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824). A trial court has broad discretion to find that the jury is hopelessly deadlocked, and so long as it properly exercises that discretion, its consequent determination of manifest necessity generally will not risk barring reprosecution. See United States v. Wecht, 541 F.3d 493, 504-10 (3d Cir.), cert. denied, 129 S. Ct. 658 (2008). If the trial court fails to exercise that discretion properly, our appellate scrutiny tightens. See id.

The manifest necessity doctrine only governs, however, if the mistrial is declared over the defendant's objection or without his consent. Where the defendant consents to or requests the mistrial, manifest necessity is not required to enable reprosecution. See United States v. Dinitz, 424 U.S. 600, 607 (1976); United States v. Tateo, 377 U.S. 463, 467 (1964); Love v. Morton, 112 F.3d 131, 133, 138 (3d Cir. 1997). Such circumstances evince "a deliberate election on [the defendant's] part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." United States v. Scott, 437 U.S. 82, 93 (1978). Consent need not be express, but may be implied. Love, 112 F.3d at 138-39.

Brewley argues that the District Court abused its discretion when it precipitately declared the mistrial. The Government, for its part, does not attempt to defend the mistrial on grounds of manifest necessity. Instead, it argues that Brewley impliedly consented to the mistrial and that a proper finding of manifest necessity was therefore

10

unnecessary. We agree.[3] Accordingly, we address neither manifest necessity nor the District Court's procedures in declaring the mistrial.

In Love, we held that a defendant's failure to object to a court's mistrial declaration may constitute implied consent to the mistrial, but that "we will not infer consent from defense counsel's silence unless there was some opportunity to object." 112 F.3d at 138. We made clear that such an opportunity must be "meaningful." Id.; see also United States v. Lara-Ramirez, 519 F.3d 76, 83 (1st Cir. 2008) ("Consent may sometimes 'be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so." (quoting United States v. Toribio-Lugo, 376 F.3d 33, 40 (1st Cir. 2004))). Moreover, because "close cases regarding the propriety of a mistrial 'should be resolved in favor of the liberty of a citizen,'" Love, 112 F.3d at 138 (quoting United States ex. rel. Russo v. Superior Court of N.J., Law Div., 483 F.2d 7, 17 (3d Cir. 1973)), we explained that "we must proceed with caution in inferring consent from counsel's failure to object." Id.

We concluded for four reasons that the defendant in Love did not have a meaningful opportunity to object, and that his failure to do so therefore did not constitute implied consent: (1) "the judge made no inquiry of counsel regarding the propriety of a

---

[3] Our review of implied consent is plenary. See United States v. Lara-Ramirez, 519 F.3d 76, 83 (1st Cir. 2008) (citation omitted).

11

mistrial"; (2) "the judge returned to the courtroom to declare a mistrial only five or ten minutes after informing counsel of his intent to do so"; (3) "when the judge declared the mistrial and dismissed the jury, he immediately returned to his chambers and quickly left the courthouse," precluding "a reasonable opportunity to raise an objection"; and (4) the "emotionally charged" atmosphere in those circumstances made objecting a difficult proposition. Id.

Several considerations lead us to distinguish this case from Love and conclude that Brewley had a meaningful opportunity to object.[4] First, when the District Court declared a mistrial and informed Brewley's attorney that his client would be subject to retrial, rather than objecting, counsel explicitly acquiesced, stating, "Yes, Your Honor." App. III.39. See Camden v. Circuit Court of Second Judicial Circuit, 892 F.2d 610, 615 (7th Cir. 1989) ("While the trial court's contemplation of a new trial is not conclusive on the issue of double jeopardy, the court's comments about a mistrial and reference to a second trial should have prompted defense counsel to object if he did not agree with the need for a mistrial or the propriety of a retrial.") (citation omitted). Moreover, counsel was plainly aware of the implications a mistrial would have as opposed to an acquittal; this is evidenced by his statement to the court that he "liked" the initial acquittal ruling

---

[4] We reject the Government's argument that Brewley affirmatively joined in Wilson's mistrial motion when the District Court stated that it "assume[d] all defendants join[ed.]" App. II.44. The transcript does not reveal a response from Brewley or his counsel to the District Court's "assumption," and we will not infer one.

12

"better."[5]

Second, the record demonstrates that Brewley and his attorney were all too anxious to vacate the courtroom the moment the first opportunity arose. It took but seconds for them to request to leave when the District Court erroneously pronounced Brewley not guilty.[6] The transcript reveals an equal, if not greater, eagerness to leave when the court informed them that a mistrial would be declared instead; indeed, counsel instantaneously queried: "Can we be excused?" The Court of Appeals for the Fifth Circuit has addressed a similar scenario:

> [T]he trial court declared a mistrial as to Palmer on August 21, 1995. At that time, Palmer's counsel made no objections to the declaration of mistrial. Rather, her counsel's only statement before the court was a request to be excused from the proceedings. After the trial court granted that request, Palmer's counsel left the courtroom. Not until November 30, 1995, long after the first trial had concluded and just before her second trial, did Palmer object to the mistrial that had been declared on August 21. This fails to qualify as the "timely objection" required by our Circuit.

---

[5] We reject any notion that this statement constituted an objection. See United States v. Palmer, 122 F.3d 215, 219 (5th Cir. 1997) ("Our precedents require that criminal defendants make timely, explicit objections to a sua sponte declaration of a mistrial, lest they be held to have impliedly consented to it."). Counsel's jocular comment clearly was one of acquiescence rather than protest.

[6] The District Court's initial pronouncement from the bench that Brewley was not guilty did not trigger the Double Jeopardy Clause's protection. "An oral grant of a motion for acquittal is no more than an interlocutory order, which the court has inherent power to reconsider and modify . . . prior to the entry of judgment." United States v. Washington, 48 F.3d 73, 79 (2d Cir. 1995) (citation and quotation marks omitted). The District Court here did not enter a judgment of acquittal, but instead immediately corrected itself when the Government pointed out the oversight.

13

United States v. Palmer, 122 F.3d 215, 218-19 (5th Cir. 1997).

Third, whereas in Love the trial judge immediately left the bench (precluding an opportunity for reflection and objection), the District Judge in this case continued to address other matters with the remaining defendants for forty-five more minutes. Had he wanted to, Brewley's counsel could easily have stayed in court to lodge an objection, or even returned to do so after "thoughtful and reflective decision-making." Love, 112 F.2d at 138-39. Counsel did not avail himself of that very real opportunity.

Fourth, unlike Love, the circumstances here did not make objection awkward or difficult. The mistrial ruling occurred outside the jury's presence, and no unusual circumstances existed to prevent counsel from objecting. To the contrary, the record refutes any claim that the defense attorneys were reluctant at that time (or any other) to object to the District Court's rulings.

Fifth, given the obvious direction that the proceedings had taken – with an 11-1 jury split apparent, and several other defendants having already moved for a mistrial – it is not unreasonable to require counsel to have anticipated a mistrial declaration and to have been prepared to give a response. See United States v. Nichols, 977 F.2d 972, 974-75 (5th Cir. 1992) (per curiam) (stating that the record belied defendant's claim that a mistrial ruling came as a "total surprise," and finding the failure to object to be implied consent); Camden, 892 F.2d at 618 (finding implied consent where defendant did not object to mistrial because "[d]efense counsel should have anticipated the possibility of a

14

mistrial and been prepared to object or suggest more acceptable alternatives when the trial judge announced his ruling").

Finally, we cannot ignore the circumstances under which the mistrial ruling was made, and the strategic options available to Brewley at that time. Having learned that eleven out of twelve jurors believed his client guilty, it is unsurprising that counsel did not insist that deliberations continue. While Brewley of course had the prerogative to insist on "his valued right to have his guilt or innocence determined before the first trier of fact," Scott, 437 U.S. at 93, the failure to object to the mistrial suggests that counsel took into account the possibly dire consequences that invocation of that right might have induced.

We recognize that the District Court did not consult with (or even alert) defense counsel before abruptly declaring the mistrial. Cf. Love, 112 F.2d at 138. Nevertheless, we conclude under the circumstances that Brewley had a meaningful opportunity to register his objection to the mistrial after the court declared it, and that his failure to do so resulted in his implied consent to it. Accordingly, the Double Jeopardy Clause did not bar reprosecution.

## III.

Brewley asserts three other claims[7]: (1) that the District Court improperly failed

---

[7] In his statement of issues presented, Brewley also lists a fourth claim that the prosecutor's improper statements during summation warrant a new trial. Brewley Br. at 7. Besides mentioning it in passing in his Summary of the Argument, see id. at 12, he

to poll the jury after the verdict; (2) that the second trial violated his rights under the Speedy Trial Act; and (3) that a defect in the verdict sheet warrants reversal. A thorough review of the record convinces us that these claims are entirely without merit, and we reject them without further discussion.

IV.

For the foregoing reasons, we will affirm the judgment of conviction.

---

does not argue the point in his brief, and it is therefore waived. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("[F]ailure to . . . argue an issue in [the] opening brief constitutes waiver of that issue on appeal.") (citation omitted).