**UNITED STATES of America**

**v.**

**Shango ALLICK, Appellant**

**United States of America**

**v.**

**Marcelino Garcia, Appellant**

**United States of America**

**v.**

**Carolyn Urgent, Appellant**

**United States of America**

**v.**

**Isaiah Fawkes, Appellant**

**United States of America**

**v.**

**Christopher Alfred, Appellant.**

**Nos. 08–4165, 08–4254, 08–4255, 08–4299, 08–4300.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 4, 2010.

Filed: July 7, 2010.

Alphonso G. Andrews, Esq., Office of United States Attorney, Christiansted, VI, for United States of America.

Jeffrey B.C. Moorhead, Esq., Christiansted, VI, for Shango Allick.

Scot F. McChain, Esq., The McChain Nissman Law Group, Christiansted, VI, for Marcelino Garcia.

Edward L. Barry, Esq., Hamm & Barry, Christiansted, VI, for Carolyn Urgent.

Jomo Meade, Esq., Frederiksted, VI, for Isaiah Fawkes.

Amelia B. Joseph, Esq., Christiansted, VI, for Christopher Alfred.

Before: SMITH, CHAGARES, and JORDAN, Circuit Judges.

## OPINION

CHAGARES, Circuit Judge.

Appellants Shango Allick, Marcelino Garcia, Carolyn Urgent, Isaiah Fawkes, and Christopher Alfred challenge the District Court's denial of their motions to dismiss the indictments against them based on double jeopardy. On April 15, 2008, another panel of this Court vacated an earlier order of the District Court denying the appellants' motions to dismiss, remanding the case for an evidentiary hearing to address gaps in the record that precluded us from determining whether double jeopardy barred reprosecution. *United States v. Allick*, 274 Fed.Appx. 128 (3d Cir.2008). With the benefit of the evidence developed in that evidentiary hearing, held on June 16, 2008, we will now affirm the decision of the District Court.

### I.

Because our earlier opinion set forth the factual background and complicated procedural history in detail, we will only briefly summarize the facts relevant to the instant appeals. In 2005, the appellants, along with eleven other co-defendants, were indicted for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a) and (h) (the "2005 indictment"). The appellants and four of their co-defendants proceeded to trial. The trial was presided over by the Honorable Raymond L. Finch, then-Chief Judge of the District

Court of the Virgin Islands, and lasted from January 31, 2006 to February 17, 2006. Following closing arguments on February 17, the jury began deliberations but was dismissed mid-day for the holiday weekend. The jury continued deliberations on February 21, 2006 and, during deliberations on February 22, sent three notes to the judge, each requesting additional evidence or a re-reading of instructions. After receiving each note, the judge consulted with counsel on the record and in open court before responding to the jury's requests. On February 24, 2006, the jury sent a fourth and final note to the judge. It stated: "after considerable deliberation we the jurors of this case are presently in a deadlock. We await further instructions." Appendix ("App.") 2.

Judge Finch then met with the Government and counsel for most of the defendants in his chambers. This in-chambers conference was not recorded, and formal appearances were not entered. At the evidentiary hearing held on June 16, 2008, however, Judge Finch and several of the attorneys who were present testified concerning the substance of the in-chambers conference. Counsel for all of the appellants except Fawkes were present, and the attorney representing Allick "sat in … on behalf of … Fawkes." App. 142 (question posed by counsel for Fawkes during cross-examination of Judge Finch). None of the defendants was present during the in-chambers conference.

During this in-chambers conference, counsel for Urgent requested that Judge Finch declare a mistrial. App. 113–14 (testimony of counsel for Urgent). At the evidentiary hearing, counsel for Urgent recalled telling Judge Finch "this is the third time they've indicated they had a weekend to think this over, and I'm sure they're not going to reach a decision" and "let's live to fight another day." App. 131. None of

the attorneys present during the conference objected to this suggestion or offered any alternatives to declaring a mistrial, *see* App. 115 (testimony of counsel for Urgent), 139 (testimony of Judge Finch), 157 (same), 220–21 (testimony of counsel for Alfred), despite having an opportunity to do so, *see* App. 154 (testimony of Judge Finch).

Shortly after the in-conference chambers, Judge Finch re-entered the courtroom and requested that the jury be recalled. Judge Finch then asked the jury foreperson whether "this note, with respect to your inability to reach a verdict, applies to all defendants and all charges?" App. 306. The foreperson responded, "Yes, it applies to all defendants." *Id.* At this point, Judge Finch declared a mistrial: "Very well. Counsel, there being nothing else, I will declare a mistrial." *Id.* Judge Finch then thanked and dismissed the jury, addressed several minor issues, and then adjourned. App. 306–07. At no point during this on-the-record exchange did counsel for any of the defendants object, request a conference outside the presence of the jury, or in any other way seek to prevent the declaration of a mistrial.

After Judge Finch scheduled a date for the re-trial, several of the defendants, including appellants Allick, Garcia, and Urgent, moved to dismiss the 2005 indictment based on double jeopardy. On June 14, 2007, a grand jury returned another indictment against the defendants (the "2007 indictment"). Following the return of the 2007 indictment, the government moved to dismiss the 2005 indictment without prejudice. Appellants Urgent and Fawkes opposed this motion, but the District Court never addressed the motion. Thereafter, appellants Urgent, Allick, and Garcia moved to dismiss the 2007 indictment based on double jeopardy.

Judge Finch initially issued an order dismissing the 2005 indictment based on double jeopardy, but he ultimately vacated this order and recused himself from further proceedings related to both the 2005 indictment and the 2007 indictment. Both cases were subsequently assigned to the Honorable Anne E. Thompson, United States District Judge for the District of New Jersey.

On October 31, 2007, Judge Thompson denied the defendants' motions to dismiss the 2005 and 2007 indictments, a decision that was subsequently appealed. By order dated April 15, 2008, we vacated and remanded for an evidentiary hearing. Following the hearing, Judge Thompson issued an order, dated October 6, 2008, denying appellants' motions to dismiss based on a finding that counsel had impliedly consented to the mistrial declaration by failing to object despite being given the opportunity to do so. She also rejected appellants' argument that counsel were denied an opportunity to consult with their clients before a mistrial was declared. In the same order, Judge Thompson granted the motion of one co-defendant whose attorney had not been present during the in-chambers conference. Appellants timely appealed.

## II.

We have jurisdiction to review these appeals pursuant to the collateral order doctrine. *See Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Venable,* 585 F.2d 71, 74 (3d Cir.1978). We accept the District Court's factual findings unless clearly erroneous, *see United States v. Lara–Ramirez,* 519 F.3d 76, 83 (1st Cir. 2008), and we exercise plenary review over the District Court's legal conclusions. *See United States v. Rigas,* 605 F.3d 194, 203 n. 7 (3d Cir.2010) (en banc).

## III.

The appellants raise two lines of argument. First, the appellants argue that they were not given an adequate opportunity to object to the mistrial. Second, appellants Urgent and Allick argue that they were deprived of the right to be present and to be consulted when the decision to declare a mistrial was made.

### A.

▮ The Double Jeopardy Clause "forbids that 'any person be subject for the same offence to be twice put in jeopardy of life or limb.'" *United States v. Rivera,* 384 F.3d 49, 53 (3d Cir.2004) (quoting U.S. Const. amend. V). Relevant here, it protects "the defendant's valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). But that right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.* One such instance is when "manifest necessity" requires that a mistrial be declared before the verdict is given. "[T]he classic basis for a proper mistrial," in turn, is a deadlocked jury. *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *see also United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). A trial court has broad discretion to find that the jury is hopelessly deadlocked, and so long as it properly exercises that discretion, its consequent determination of manifest necessity generally will not risk barring reprosecution. *See United States v. Wecht,* 541 F.3d 493, 504–10 (3d Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 658, 172 L.Ed.2d 616 (2008).

The manifest necessity doctrine only governs, however, if the mistrial is de-

clared over the defendant's objection or without his consent. Where the defendant consents to or requests the mistrial, manifest necessity is not required to enable reprosecution. *See United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Tateo,* 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *Love v. Morton,* 112 F.3d 131, 133, 138 (3d Cir.1997). Such circumstances evince "a deliberate election on [the defendant's] part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Consent need not be express, but may be implied. *Love,* 112 F.3d at 138–39.

In *Love,* we held that a defendant's failure to object to a court's mistrial declaration may constitute implied consent to the mistrial, but that "we will not infer consent from defense counsel's silence unless there was some opportunity to object." 112 F.3d at 138. We made clear that such an opportunity must be "meaningful." *Id.*; *see also United States v. Lara–Ramirez,* 519 F.3d 76, 83 (1st Cir.2008) ("Consent may sometimes 'be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so.'" (quoting *United States v. Toribio–Lugo,* 376 F.3d 33, 40 (1st Cir.2004))). Moreover, because "close cases regarding the propriety of a mistrial 'should be resolved in favor of the liberty of a citizen,'" *Love,* 112 F.3d at 138 (quoting *United States ex. rel. Russo v. Superior Court of N.J., Law Div.,* 483 F.2d 7, 17 (3d Cir. 1973)), we explained that "we must proceed with caution in inferring consent from counsel's failure to object." *Id.*

Unlike *Love,* in this case counsel for the appellants were given ample opportunity to object to the declaration of a mistrial or suggest alternative courses of action. In fact, the suggestion to declare a mistrial did not come from Judge Finch; rather, counsel for Urgent requested that he declare a mistrial. *See* App. 113–14, 131. During the in-chambers conference, counsel had the opportunity to object to this suggestion, voice any potential concerns, suggest alternative options, or request time to confer with their clients. Despite this opportunity, none of the attorneys present during the conference made any effort to object. Counsel had an additional opportunity to object during the in-court proceedings when Judge Finch queried the jury foreperson and then declared a mistrial. Judge Thompson did not commit clear error in interpreting the evidence developed at the evidentiary hearing regarding the circumstances of the in-chambers conference and the subsequent mistrial declaration. Under these circumstances, we conclude that the appellants had a meaningful opportunity to object to the mistrial, and that their failure to do so amounted to their implied consent. Accordingly, the Double Jeopardy Clause does not bar reprosecution of the appellants.

### B.

Appellants Urgent and Allick also argue that they were not present during the in-chambers conference nor consulted regarding the decision to declare a mistrial. The Supreme Court has recognized four fundamental choices that a criminal defendant must always make. *Jones v. Barnes* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1433 (3d Cir.1996). Although we have not addressed this specific issue, other courts of appeals have consistently held that the decision to request or consent to a mistrial is a strategic decision that ultimately rests with counsel. *See United States v. Chap-*

*man,* 593 F.3d 365, 369 (4th Cir.2010) (concluding that "decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client"); *United States v. Burke,* 257 F.3d 1321, 1324 (11th Cir.2001) (decision not to request a mistrial is a "tactical decision entrusted to defense counsel, binding the defendant even when the defendant expressed a contrary wish to his lawyer"); *United States v. Washington,* 198 F.3d 721, 723–24 (8th Cir.1999) (requesting a mistrial is a non-fundamental strategic decision); *Watkins v. Kassulke,* 90 F.3d 138, 143 (6th Cir.1996) (holding that where "defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant ..., regardless of whether the defendant participates in the decision."); *Galowski v. Murphy,* 891 F.2d 629, 639 (7th Cir.1989) ("The decision whether to move for a mistrial or instead to proceed to judgment with the expectation that the client will be acquitted is one of trial strategy."). In addition, Federal Rule of Criminal Procedure 43 provides that a defendant's presence is not required at a "conference or hearing on a question of law." Fed.R.Crim.P. 43(b)(3); *see Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that Rule 43 did not require defendant's presence at in-camera interview of jurors). Trial counsel had the authority to object to the suggestion that a mistrial be declared during the in-chambers conference held without the defendants present. Their failure to do so supports our conclusion that the appellants consented to the mistrial.

### IV.

For the foregoing reasons, we will affirm the decision of the District Court.