**UNITED STATES of America**

v.

**Shango ALLICK, Appellant.**

**United States of America**

v.

**Jamaal Maragh, Appellant.**

**United States of America**

v.

**Isaiah Fawkes, Appellant.**

**United States of America**

v.

**Marcelino Garcia, Appellant.**

**United States of America**

v.

**Carolyn Urgent, Appellant.**

**United States of America**

v.

**Christopher Alfred, Appellant.**

**United States of America**

v.

**Jamaal Young, Appellant.**

Nos. 07–4288 to 07–4290, 07–4292, 07–4313 to 07–4315, 07–4321, 07–4346, 07–4371, 07–4396, 07–4711.

United States Court of Appeals, Third Circuit.

Argued Feb. 1, 2008.

Filed: April 15, 2008.

---

Jeffrey B.C. Moorhead, Esq., [Argued], St. Croix, USVI, Counsel for Appellant Shango Allick.

Nathania M. Bates, Esq., St. Croix, USVI, Counsel for Appellant Jamaal Maragh.

Jomo Meade, Esq., St. Croix, USVI, Counsel for Appellant Isaiah Fawkes.

Scot F. McChain, Esq., St. Croix, USVI, Counsel for Appellant Marcelino Garcia.

Edward L. Barry, Esq., Hamm & Barry, St. Croix, USVI, Counsel for Appellant Carolyn Urgent.

Amelia B. Joseph, Esq., St. Croix, USVI, Counsel for Appellant Christopher Alfred.

Eszart A. Wynter, Esq., St. Croix, USVI, Counsel for Appellant Jamaal Young.

Alphonso G. Andrews, Esq., [Argued], Office of the United States Attorney, St. Croix, USVI, Counsel for Appellee.

Before RENDELL and CHAGARES, Circuit Judges, and POLLAK,* District Judge.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

The procedural history of the case is complicated, involving numerous motions and multiple orders before two district court judges. It has dragged on for almost three years now, yet no final judgment is in sight. The present appeal primarily challenges the denial of defendants' motions to dismiss two indictments based on double jeopardy. While we would like to reach some resolution as to whether mistrial was properly granted, the record before us does not allow us to do so. For the reasons that follow, we will vacate and remand to the District Court for an evidentiary hearing.

### I. Facts and Procedural History

In 2005, appellants Shango Allick, Jamaal Maragh, Carolyn Urgent, Marcelino Garcia, Isaiah Fawkes, Christopher Alfred, and Jamaal Young, along with nine other co-defendants, were indicted for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a) and (h) (the "2005

---

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

indictment").[1] Appellants Garcia and Fawkes were also charged with a drug trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846. Of the nine other co-defendants, four entered guilty pleas, two were dismissed pre-trial, one was a fugitive, and two others were tried with appellants (one was acquitted pursuant to Rule 29 and the other was dismissed post-trial).

A jury trial over which Judge Finch presided ran from January 31, 2006 to February 17, 2006. It involved nine days of testimony from fifteen government witnesses and two days of closing arguments. Following closing arguments on February 17th, the jury began deliberations but was dismissed mid-day for the holiday weekend. The jury continued deliberations on February 21, 2006 and, during deliberations on February 22nd, sent three notes to the judge, each requesting additional evidence or a re-reading of instructions.[2] After receiving each note, the judge consulted with counsel on the record and in open court before responding to the jury's requests. On February 24, 2006, the jury sent a fourth and final note to the judge. It stated: "after considerable deliberation we the jurors of this case are presently in a deadlock. We await for further instructions or information regarding this case." (App. 26).

Judge Finch then met with the government and some defense counsel in his chambers. It is unclear how long the meeting lasted, but it may have been as brief as ten minutes. The meeting was not recorded. There is much debate over whether this was a formal conference and whether defense counsel were permitted to make arguments. No appearances were entered. Maragh's counsel was not present at the meeting because she was outside the building trying to reach her client by cell phone to ensure his appearance in court. She could not remain in the courthouse due to a policy prohibiting cell phones in the building, but had informed a law clerk that she would be outside if needed.

Following the in-chambers conference, the Court recessed for lunch. After the recess, the judge requested that the bailiff call in the jury. He then addressed the jury in open court and asked the jury foreperson "[w]hether or not this note, with respect to your inability to reach a verdict, applies to all defendants and all charges?" (App. 28). The foreperson responded, "Yes, it applies to all defendants." The judge did not address the other jurors but, rather, said, "Very well. Counsel, there being nothing else, I will declare a mistrial." (App. 28). He then thanked the jury and adjourned court.

The next Monday, February 27, 2006, Allick filed an appeal of the order, which other defendants also subsequently filed. We dismissed those appeals for lack of jurisdiction on October 4, 2006. On October 16, 2006, Judge Finch then scheduled a retrial date of February 5, 2007, which was rescheduled several times. On April 3, 2007 and June 13, 2007, respectively, Allick and Garcia, joined by Maragh, Young, and Urgent, filed motions to dismiss the 2005 indictment based on double jeopardy.

---

1. Because the procedural history of this case is lengthy, we set forth only that part that is most relevant.

2. The notes, respectively, requested information regarding: 1) verification of all appellants' signatures, except Urgent's which had been presented at trial, copies of the jury charge, and copies of interview reports; 2) whether several exhibits were properly introduced and whether the individuals identified in those exhibits had been charged or had plea agreements; and 3) the name on the account to which several of checks were deposited.

On June 14, 2007, a Grand Jury returned another indictment against appellants (the "2007 indictment") that included the counts of the 2005 indictment (money laundering conspiracy and drug conspiracy) but added substantive counts of money laundering. Given the 2007 indictment, the government moved to dismiss the 2005 indictment without prejudice. On June 21, 2007, Urgent and Maragh, joined by Young and Fawkes, filed an opposition to the government's motion to dismiss, upon which the District Court never ruled. Motions to dismiss the 2007 indictment based on double jeopardy were also filed by Urgent, Allick, and Garcia, joined by Young and Maragh.

On September 5, 2007, Judge Finch held a hearing on the pending motions to dismiss both the 2005 and 2007 indictments. At the hearing, the remaining appellants joined in the motions to dismiss. On the record, Maragh's counsel noted that she had been absent from the in-chambers meeting and could not comment on what had occurred therein. Government counsel attempted to offer former defense counsel as a witness as to the in-chambers proceeding and/or a proffer of facts, but the judge indicated that he was ready to rule without the government's evidence.

Following the hearing, Judge Finch issued an order to dismiss the 2005 indictment based on double jeopardy. The Order indicated as the ground for dismissal that the "Court improvidently ordered a mistrial in that it did not comply with Rule 26.3 of the Federal Rules of Criminal Procedure" and noted that "[t]here is no indication on the record that the Court adhered to this rule." (App. 172). In a separate order issued that same day, Judge Finch recused himself from the 2007 case, leaving the motions to dismiss the 2007 indictment undecided.

On September 19, 2007, the government filed a motion to reconsider the dismissal of the 2005 case. The government argued that the judge should have permitted it to present witnesses, accepted its proffer, or taken judicial notice as to the in-chambers conference. Also, because Judge Finch was a witness to what had transpired in chambers, the government contended that he should have recused himself rather than decide the issue. In conjunction with its motion, the government filed a motion to admit proffer. In the proffer, the government set forth allegations with respect to the in-chambers meeting and events immediately thereafter. Namely, the government alleged that: "[t]he lawyers discussed the notes amongst themselves in the judge's presence"; "[a]t the conclusion of the conference, which lasted at least ten (10) minutes, the court announced that it would have to declare a mistrial. No one stated any objection to the court's announced intent"; "[p]rior to the entry of the jury into the Courtroom, all counsels were well aware that the Court intended to declare a mistrial"; and "[a]t no time on February 24, 2006 did any counsel object to, or question, the mistrial declaration or the Court's intent to declare a mistrial." (App. 179–80). Both Urgent and Maragh filed oppositions to the proffer.

After a hearing on the government's motion, Judge Finch vacated his order dismissing the 2005 indictment on October 18, 2007 and recused himself from further proceedings in the 2005 case. Allick and Maragh appeal the order vacating the dismissal.

The 2005 and 2007 cases were subsequently assigned to Judge Anne Thompson. Without a hearing, Judge Thompson denied appellants' motions to dismiss both cases on October 31, 2007. She relied on the government's proffer to conclude that the trial judge met with counsel in cham-

bers and indicated he would declare a mistrial. Judge Thompson held that "[t]he recorded facts of this case support a finding for this declaration of a mistrial, notwithstanding the directive of Rule 26.3, and the Court need not reach the question of whether there was implied consent." (App. 222). She found manifest necessity for a mistrial on the ground that

> [t]he jury deliberations, which took over five days and spanned over seven days, the three notes from the jury that the trial judge meticulously answered, the fourth note from the jury indicating a deadlock, and the time that lapsed between the jury's fourth note indicating a deadlock and the time in which the trial judge declared a mistrial, justify such a finding.

(App. 223). All appellants filed notices of appeal.

On October 31, 2007, Allick sought a stay of the jury trial scheduled for November 13, 2007 on the 2007 indictment, which Judge Thompson denied, declaring the motions to dismiss for double jeopardy frivolous. Allick sought and received an emergency stay from this Court.

We have jurisdiction to review these appeals pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. *See Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Venable*, 585 F.2d 71, 74 (3d Cir.1978).

## II. Preliminary Issues

The appellants present a wide range of arguments. The heart of their appeal, however, concerns the denial of their motions to dismiss the 2005 and 2007 indictments based on double jeopardy. Before evaluating the double jeopardy issue, however, we must dispose of several threshold procedural arguments raised by appellants.

### A. Judge Finch's October 18, 2007 Order

■ In addition to appealing Judge Thompson's order denying their motions to dismiss, several appellants challenge Judge Finch's October 18, 2007 order which vacated his order of September 5, 2007. This order lacks finality and does not come within the purview of the collateral order doctrine, as it did not "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Accordingly, we lack jurisdiction to review it and will dismiss the appeals of the October 18, 2007 order (Nos. 07–4288 & 07–4292).[3]

### B. Judge Finch's Jurisdiction to Vacate the September 5, 2007 Order

Appellants also claim that Judge Finch lacked jurisdiction to vacate his September 5, 2007 order granting appellants' motions to dismiss the 2005 indictment. They allege that he recused himself from further proceedings when he issued the September 5, 2007 order and therefore could not subsequently vacate it. This argument is without merit. Judge Finch did not recuse himself in his order relative to the 2005 case. Rather, in a separate order

---

**3.** Urgent filed a motion to reconsider that was denied on November 8, 2007, which denial she now appeals. This order similarly lacks finality. Furthermore, any arguments regarding the November 8, 2007 order were waived as it is not mentioned in Urgent's brief. We accordingly dismiss the appeal (No. 07–4396) for lack of jurisdiction.

also issued on September 5, 2007, he recused himself from further proceedings related to the 2007 indictment.

## C. Judge Thompson's Authority to Find Manifest Necessity

Appellants argue that Judge Thompson, who was assigned to the two cases after Judge Finch recused himself, abused her discretion by finding manifest necessity for a mistrial. They suggest that she had no authority to evaluate the existence of manifest necessity because she did not preside over the trial. No law supports this contention. The decision was within the Court's authority.

## III. Double Jeopardy

The appellants call upon us to decide whether Judge Finch improperly ordered a mistrial such as to bar reprosecution. They argue that manifest necessity did not exist and they did not consent, either expressly or impliedly, to the mistrial. Therefore, they urge, they may not be retried for the conspiracy counts included in the 2005 and 2007 indictments.

The Double Jeopardy Clause protects against multiple trials or punishments for the same offense, U.S. Const. Amend. V, and safeguards a defendant's right to have his trial completed by a particular jury. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). In close cases, doubts about the propriety of a mistrial are to be resolved "in favor of the liberty of a citizen." *United States ex rel. Russo v. Superior Court of New Jersey,* 483 F.2d 7, 17 (3d Cir.1973). This right, however, "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade,* 336 U.S. at 689, 69 S.Ct. 834.

Those instances include trials where manifest necessity existed or the defendant expressly or impliedly consented to the mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Love v. Morton,* 112 F.3d 131, 133 (3d Cir.1997). Here, if manifest necessity justified ordering a mistrial, as Judge Thompson found, then defendants need not have consented to mistrial. *United States v. Dinitz,* 424 U.S. 600, 606–07, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Alternately, if the defendants consented to the declaration of mistrial, manifest necessity need not be found. *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

In an ordinary double jeopardy challenge, our task is relatively straightforward. The parties point to various record references that support the presence or absence of manifest necessity and consent. Often, the jurors are polled and they make clear that they are hopelessly deadlocked and further deliberations would be fruitless. At other times, there is discussion and acquiescence by defendants on the record.

This case, however, is unique in that the record of the proceedings does not inform our review. Here, on the one hand, the government relies almost exclusively on its own proffer, which, it says, can be used to find manifest necessity and consent. On the other, appellants rely on the absence of a record of the in-chambers proceeding as proof that steps necessary to a finding of manifest necessity were not taken and that they did not consent to the mistrial. Neither of these proposals is viable; rather we must look to the record evidence in making our determination on appeal.

The government's proffer is not record evidence. It is an after-the-fact recollection by one party of what occurred during the in-chambers conference. The statements contained in it represent inadmissi-

ble hearsay, which the defendants were not able to cross-examine. Two defendants opposed the proffer's admission; Maragh's counsel in particular contested its reliability.

Faced with this grossly deficient record, we cannot determine whether double jeopardy bars reprosecution. Most importantly, there is no record of the in-chambers conference, such that we can discern what actually happened. This is critical because the in-chambers conference immediately followed the receipt of the jury's fourth note and immediately preceded the declaration of mistrial. Because the meeting in chambers was not recorded, we cannot know what was discussed therein, who was present, whether notice was given that a mistrial was contemplated, what counsels' reaction was, whether alternatives were presented or debated, et cetera, without further expansion of the record. Accordingly, we will remand for an evidentiary hearing before the District Court. The following outlines those issues that should be developed at the hearing and that will be relevant to an informed decision on the motions to dismiss.

### A. Manifest Necessity

On remand, the government will bear the burden of justifying the mistrial. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. McKoy,* 591 F.2d 218, 222 (3d Cir.1979). Where a jury is genuinely unable to reach a verdict, a district court has broad discretion to declare a mistrial. *See Arizona,* 434 U.S. at 505, 98 S.Ct. 824; *Crawford v. Fenton,* 646 F.2d 810, 817 (3d Cir.1981); *see also United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034 (3d Cir.1975) (observing that "the genuine inability of the jury to reach a unanimous verdict within a reasonable period constitutes 'manifest necessity' for

discharge of the jury and retrial of the accused"). Nonetheless, the situation must present "extraordinary circumstances" to justify retrial following the dismissal of a jury before a verdict is reached. *See Russo,* 483 F.2d at 15 (quoting *United States v. Perez,* 22 U.S.(9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)).

There are no "hard and fast rules" with respect to when a trial judge may declare a mistrial without barring reprosecution. *Russo,* 483 F.2d at 13; *see also Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (observing that the decisions regarding double jeopardy "escape meaningful categorization"). Rather, each case turns on its particular facts. The facts of record therefore should support the finding of manifest necessity, regardless of whether or not the trial judge made an explicit finding of manifest necessity. *See, e.g., Arizona,* 434 U.S. at 516–17, 98 S.Ct. 824; *United States v. Sanders,* 591 F.2d 1293, 1299 (9th Cir.1979) (reviewing a wide array of cases and concluding that "even when the judge explains his or her reasons for declaring a mistrial, the record must support the explicit or implicit finding of 'manifest necessity'"). Where the record does not establish that, before dismissing the jury, the trial judge has "exercised the 'scrupulous' and 'extraordinary' care that the Supreme Court has mandated for the protection of a defendant's constitutional right to be spared repeated attempts to convict him," a defendant cannot be retried. *Webb,* 516 F.2d at 1043. Factors that go into the analysis are: the length of deliberations, the length of trial, the complexity of issues, the jury's statements to the judge (including whether it states that it is unable to agree or hopelessly deadlocked), the judge's polling the jury to determine whether the sentiment is shared, the parties' opportunity to comment on the propriety of a mistrial, and

the judge's prudent consideration of reasonable alternatives. *See, e.g., Jorn,* 400 U.S. at 487, 91 S.Ct. 547; *Escobar v. O'Leary,* 943 F.2d 711, 718 (7th Cir.1991) (listing numerous factors).

The few factors that can be evaluated on the record before us and do not need to be developed on remand—namely, the length of the proceedings, the jury's condition, and statements from the jury—fail to support the declaration of a mistrial. Although "there is no uniform minimum period during which a jury must deliberate before the court may declare a hung jury," here the jury deliberations had lasted an amount of time appropriate to the length of the trial, the number of defendants, and the complexity of the issues before them. *Webb,* 516 F.2d at 1044. There were nine days of testimony and two days of closing arguments. The trial involved nine defendants and fifteen witnesses. By the time of mistrial, jury deliberations had lasted only three and a half days; the jury deliberated briefly on Friday, February 17th, following the close of trial and was recessed at mid-day for a long weekend. After reconvening on Tuesday, February 21 st, the jury deliberated from 9:30 am to approximately 4:30 pm for three days and then only briefly on the morning of Friday, February 24th prior to sending the fourth note to the Judge.

Given the relatively short hours of deliberation and the fact that the jurors were not sequestered, this is not a case where the jury's physical condition supports a mistrial. The jury never indicated it was exhausted or frustrated nor did the judge or the parties inquire as to the jury's physical condition or comment on it. *Cf. Crawford,* 646 F.2d at 818–19 (finding manifest necessity where jury's exhaustion was evident from the record); *see also Russo,* 483 F.2d at 15–16 (observing that there was no support in the record for the

trial judge's discharge of the jury because he believed it to be exhausted). Nothing on the record distinguishes this jury from any other jury that has sat through an eleven day trial and deliberated for three and a half days.

We do have a statement from the jury, in its fourth note, that it is "presently deadlocked." This followed three prior notes, two days prior, that requested additional evidence and instructions. While the jury raised the issue of deadlock in its fourth note, the trial judge failed to elicit whether they were hopelessly or only presently deadlocked, not inquiring even of the jury foreman. He also failed to consult the entire jury or poll them as to their willingness to continue. To the extent that the judge asked anything of the jury, as in *Webb,* he "directed his interrogatories solely to the jury foreman, and so far as the record reveals, the foreman, alone, indicated a response." 516 F.2d at 1043–44 (holding that such inquiry "does not furnish an adequate showing that it was the collective sentiment of the jury that they had reached an impasse"). We find this particularly troublesome because the jury's note itself indicated that the jury "await[ed] further instructions," suggesting an ability and willingness to continue deliberations.

We are unable to review those other factors that might prove essential to a finding of manifest necessity because they are absent from the record. In order to evaluate appellants' claims, the District Court must allow the parties to expand the record. Any discussion in chambers as to whether the parties understood the jury to be hopelessly deadlocked based on the fourth note, whether the suggestion that the jury be dismissed came from the judge, the government, or one of the defendants, et cetera, will be relevant.[4]

4. While one party's proffer should not have

been considered as controlling for the pur-

The evidentiary hearing on remand should focus on whether the trial judge did consult counsel and canvass alternatives to mistrial as required by Federal Rule of Criminal Procedure 26.3 and our caselaw. *See McKoy*, 591 F.2d at 222 (reasoning that "only by considering and exhausting all other possibilities can the judge ensure that the defendant has received the full protection of the Double Jeopardy Clause"). It should measure compliance with Rule 26.3, which provides that "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Rule 26.3 was not meant to change the law governing mistrials, see Fed.R.Crim.P. 26.3 advisory committee's note, such that compliance with it remains one of several factors to consider. However, "[t]he dialogue fostered by [the Rule] ensures that only those mistrials that are truly necessary are ultimately granted." *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir.2004). Accordingly, as the Court of Appeals for the Eleventh Circuit has observed, "the failure to comply with that mandate necessarily creates a strong suggestion that the trial judge did not exercise sound discretion." *United States v. Berroa*, 374 F.3d 1053, 1058 (11th Cir. 2004).

Defendants identify several alternatives that were available but not employed, including polling, instructing the jury to continue, providing a break, and giving an *Allen* charge. The fact that alternatives exist and were not exercised, however, is not determinative. *Crawford*, 646 F.2d at 815. Rather, as we have said, "the District Court must exercise prudence and care, giving due consideration to reasonably available alternatives to the drastic measure of a mistrial." *Rivera*, 384 F.3d at 56 (noting that "[w]here a District Court sua sponte declares a mistrial in haste, without carefully considering alternatives available to it, it cannot be said to be acting under a manifest necessity") (internal cites omitted).

The hearing on remand should consider the substance of the in-court proceedings and in-chambers discussion so as to evaluate these factors thoroughly and reach a well-reasoned decision as to whether manifest necessity justified the order of mistrial.

## B. Consent to the Declaration of Mistrial

In denying appellants' motions to dismiss, Judge Thompson found manifest necessity for the declaration of the mistrial and, therefore, did not reach the issue of consent. Because it is not clear from the record whether manifest necessity existed and, indeed, several ingredients for the proper declaration of a mistrial may well not have been present, on remand the Court should also permit the parties to develop the record as to whether defendants consented to a mistrial.[5]

The record here is devoid of any indication as to the defendants' reactions, let alone explicit consent, to a mistrial. The government, however, argues that the de-

poses of the motions to dismiss, the Court can make findings as to what was said after hearing from all who were present.

5. While a finding regarding consent might not be necessary if manifest necessity is found, it would serve judicial economy if another appeal is taken if both aspects of essentially the same fact pattern were developed, and findings made, as a reversal as to one on appeal might then not be fatal to the ultimate ruling of the court on remand, and could do away with the need for a second remand and hearing.

fendants' consent can be implied. According to the government's proffer, the judge announced he would be granting a mistrial and none of the defense counsel objected. Appellants argue that they did not have a reasonable opportunity to object on the record to declaration of a mistrial. This question is key to determining whether appellants consented to the mistrial. For, we have been unwilling to infer consent from silence, absent some "meaningful opportunity to object to the trial judge's declaration of a mistrial." *Love*, 112 F.3d at 138.

On this record, we will not presume that defendants did in fact consent to the mistrial declaration. Accordingly, we will remand for an evidentiary hearing on this issue as well. This hearing should seek to uncover whether defendants explicitly consented to a mistrial, as there were some intimations that they had, during the September 5, 2007 hearing before Judge Finch. In evaluating whether a defendant had meaningful opportunity to object, the Court should consider whether: the defendants had advance warning or notice that a mistrial was to be declared; the judge gave adequate notice of his intent to impose a mistrial or acted so abruptly that there was little time to object; objection was only possible in front of the jury where it might have prejudiced defendants; the judge remained in the courtroom after the mistrial declaration so that counsel could consider his statement and object; and, as in the context of manifest necessity, the court invited comment or proposal of alternatives. *See Love*, 112 F.3d at 138–39.

On the issue of consent, the Court should exercise particular care with regard to Maragh, whose counsel was not present at the in-chambers conference. Evidence should be elicited as to whether Maragh's counsel otherwise had a meaningful opportunity to object and failed to do so. Although the government claims that she should have objected before the jury came into the courtroom, it is not clear that there was adequate time to do so.[6]

## IV. Conclusion

For the foregoing reasons, we will vacate the October 31, 2007 order of the District Court denying appellants' motions to dismiss and remand for an evidentiary hearing consistent with this opinion. We will dismiss for lack of jurisdiction the appeals of the October 18, 2007 order vacating the dismissal order and Urgent's appeal of the November 8, 2007 order denying her motion to reconsider.

---

6. The government also puts much stock in the trial court's statement after the jury came into the courtroom, "[c]ounsel, there being nothing further, I will declare a mistrial." (App. 29). It says this is proof that the appellants were consulted and could have objected at that point prior to the declaration of mistrial. We do not find this statement alone conclusive.