NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  11-4580
_____

UNITED STATES OF AMERICA

v.

ISIAH FAWKES,

Appellant

_____

On Appeal from the District Court
for the Virgin Islands
(D.C. No. 1-07-cr-00042-001)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Under Third Circuit LAR 34.1(a)
December 4, 2012

Before:  SMITH, HARDIMAN and ROTH, *Circuit Judges*.

(Filed: January 15, 2013)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Isaiah Fawkes appeals his judgment of conviction and sentence.  His attorney has

moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967).  For the reasons that

follow, we will grant counsel's motion to withdraw and affirm the District Court's

judgment.

I

Beginning in 2001, Fawkes and childhood friend Myron Punter agreed to operate a drug trafficking organization in Alaska. Fawkes, who lived in the U.S. Virgin Islands, was responsible for obtaining the drugs and sending them to Punter in Alaska. Approximately once per week, Fawkes sent packages containing both powder and crack cocaine concealed in colon cleanser bottles. Punter received the drugs and sold them. To pay Fawkes, Punter used the drug proceeds to wire money via Western Union money orders to Fawkes in the Virgin Islands.

Initially, Punter sent the wires in his own name. Thereafter, Punter paid others to wire funds to Fawkes. Similarly, Fawkes gave Punter names of people in the Virgin Islands who were willing to receive wires and turn over the proceeds to Fawkes. Punter eventually sent a total of $307,849 to Fawkes.

In 2005, Fawkes, Punter, and fourteen other co-defendants were indicted for conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a) and (h) and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Punter and several co-defendants pleaded guilty. The others, including Fawkes, proceeded to a jury trial, which commenced on January 30, 2006. A mistrial was declared on February 24, 2006.

In 2007, a grand jury returned a second indictment against Fawkes and seven co-defendants that included the conspiracy counts of the 2005 indictment, but also added eighty substantive counts of money laundering. After protracted litigation surrounding the defendants' claims of double jeopardy, *see United States v. Allick*, 386 F. App'x 100 (3d Cir. 2010); *United States v. Allick*, 274 F. App'x 128 (3d Cir. 2008), a jury trial for Fawkes and six remaining co-defendants commenced on March 21, 2011. On March 30, 2011, Fawkes was found guilty as to counts 1, 2, 13 to 40, and 78 to 82 of the indictment.[1] On December 2, 2011, the Court sentenced Fawkes to concurrent terms of 200 months' imprisonment on each count.

Fawkes filed a timely notice of appeal. His appointed counsel now seeks to withdraw pursuant to *Anders*, asserting that there are no nonfrivolous issues for appeal. Fawkes has not filed a pro se brief in opposition to counsel's brief. The Government has filed a brief supporting counsel's *Anders* motion.

II

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). We have appellate jurisdiction under 28 U.S.C. § 1291. Under *Anders*, we ask: (1) whether counsel adequately fulfilled the requirements of Third Circuit Local Appellate Rule 109.2(a); and (2) whether an independent review of the record presents

---

[1] Counts 3 to 12 and 41 to 77 had been dismissed pre-trial.

any nonfrivolous issues.  *United States v. Coleman*, 575 F.3d 316, 319 (3d Cir. 2009).

A

To satisfy the first prong of *Anders*, counsel must examine the record, conclude that there are no nonfrivolous issues for review, and request permission to withdraw.  *See United States v. Youla*, 241 F.3d 296, 299–300 (3d Cir. 2001).  Counsel must accompany his motion to withdraw with a "brief referring to anything in the record that might arguably support the appeal."  *Anders*, 386 U.S. at 744.  The brief must "satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and . . . explain why the issues are frivolous."  *Youla*, 241 F.3d at 300.  Counsel need not raise and reject every possible claim; rather, he must "provide[] sufficient indicia that he thoroughly searched the record and the law in service of his client so that we might confidently consider only those objections raised."  *Id.* at 301 (quoting *United States v. Marvin*, 211 F.3d 778, 781 (3d Cir. 2000)).

"Where the *Anders* brief initially appears adequate on its face, the proper course 'is for the appellate court to be guided in reviewing the record by the *Anders* brief itself,'" as well as issues raised in a defendant's pro se brief.  *Id.* (quoting *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996)).  On the other hand, if we "find[] arguable merit to the appeal, or that the *Anders* brief is inadequate to assist the court in its review, [we] will appoint substitute counsel, order supplemental briefing and restore the case to the

calendar." 3d Cir. L.A.R. 109.2(a). However, "we will not appoint new counsel even if an *Anders* brief is insufficient to discharge current counsel's obligations to his or her client and this court" if the "frivolousness [of the appeal] is patent." *Coleman*, 575 F.3d at 321 (quoting *Marvin*, 211 F.3d at 781) (internal quotation marks omitted).

In his *Anders* brief, Fawkes's counsel identifies four potential issues for appeal: (1) that the District Court erred when it denied Fawkes's trial counsel's motion to withdraw; (2) that the evidence was insufficient to support Fawkes's conviction for conspiracy to distribute cocaine; (3) that the evidence was insufficient to support Fawkes's conviction for conspiracy to commit money laundering; and (4) that the sentence imposed by the District Court was unreasonable.

Counsel then attempts to explain why each is frivolous. We find that counsel's explanation regarding issues (1), (2), and (3) is barely adequate. However, counsel's discussion of issue (4) is cursory and provides little legal or factual analysis of the claim. As such, the brief does not satisfy the requirements of Rule 109.2(a).[2]

Nevertheless, based on our independent review of the record, we find the appeal to be "patently frivolous." Accordingly, we will grant counsel's motion and affirm

---

[2] We also note that the Government's brief is unhelpful. The Government's analysis of the issues for appeal reads in its entirety: "The Government agrees that the issues raised by Appellant are frivolous for the same reasons set forth in his *Anders* brief."

5

Fawkes's conviction and sentence. *Coleman*, 575 F.3d at 321. We consider each issue in turn.

B

The first argument is that the District Court erred when it denied Fawkes's trial counsel's motion to withdraw. Appellate counsel argues that this decision violated Fawkes's Sixth Amendment right to effective assistance of counsel because trial counsel had a conflict of interest that adversely affected his representation of Fawkes.[3]

At trial, Fawkes was represented by appointed counsel Jomo Meade. Meade had also represented Fawkes in a prior criminal proceeding in which Fawkes had been charged with distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), among other charges. Against the advice of Meade, Fawkes decided to plead guilty to those charges pursuant to a plea agreement. In August 2006, he was sentenced to 87 months' imprisonment on the cocaine charge and 120 months' imprisonment on the firearm charge, to be served consecutively.

In March 2010, after Fawkes had been charged in the current conspiracy

---

[3] Although "an actual conflict of interest claim, like other types of ineffective assistance of counsel claims, is generally not cognizable in the first instance on direct appeal," *United States v. Morena*, 547 F.3d 191, 198 (3d Cir. 2008), this is one of the rare cases in which the record is sufficient to enable full consideration of the issue, *see Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125, 134 (3d Cir. 1984).

indictment and Meade had again been appointed to represent him, Fawkes filed a habeas corpus petition attacking his previous firearm sentence in which he alleged that Meade had rendered ineffective assistance of counsel by not pursuing an appeal. Meade subsequently filed a motion to withdraw as counsel in Fawkes's conspiracy case based on the fact that the trust between attorney and client had been broken. The District Court held a hearing on the motion, and upon being questioned by the Court, Fawkes stated that he wanted Meade to continue as his counsel. As a result, the Court denied the motion to withdraw.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel, which includes "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *see also Zepp*, 748 F.2d at 131. To establish a Sixth Amendment violation, the defendant must demonstrate both that there was an actual conflict of interest and that the conflict adversely affected counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 170–71 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980). "Even where an actual conflict exists," however, a defendant "may waive this conflict . . . and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 68 (1st Cir. 2009) (quoting *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir.1994)) (internal quotation marks omitted). Although a district court need not accept a

defendant's proffered waiver, we give substantial deference to district courts in making this decision. *Wheat v. United States*, 486 U.S. 153, 163 (1988).

In this case, the District Court held a hearing to consider the motion to withdraw. At the hearing, the District Court asked Fawkes if he wanted Meade to continue to represent him despite the filing of ineffective assistance claims in his habeas petition. Fawkes informed the District Court that he wanted Meade to continue representing him despite the potential conflict of interest. Nothing in the record indicates that the waiver was involuntary. The District Court thus adequately "inquire[d] into the nature of the conflict and the client's awareness of the conflict," *Zepp*, 748 F.2d at 139, and we cannot say that the District Court abused its discretion in accepting Fawkes's waiver.

C

The second and third arguments raised in the *Anders* brief relate to the sufficiency of the evidence presented at trial to convict Fawkes of conspiracy to distribute cocaine and conspiracy to commit money laundering. "In reviewing a sufficiency-of-the-evidence claim, . . . we must examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the government as the verdict winner." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (citations omitted). "We must uphold the jury's verdict if there is substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Id.*

8

(citations omitted).

1

"The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: (1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (quoting *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)) (internal quotation marks omitted). However, "a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) (citations omitted). Among the factors we have considered in determining whether a conspiracy has been shown are "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." *Id.* at 199 (citation omitted). The presence of one or more of these factors furthers the inference that a conspiracy existed. *Id.* at 200.

Here, Fawkes and Punter conducted their drug distribution operation for nearly two years. The transactions were standardized and regular; approximately once a week, Fawkes would send Punter crack and powder cocaine concealed in colon cleansing bottles. Fawkes would provide these drugs on credit and await payment until after Punter

9

sold the drugs to his customers, which demonstrates a level of mutual trust. Punter would

then pay Fawkes through an established method of payment, namely the Western Union

transactions. Based on this evidence, a reasonable juror could conclude that Fawkes and

Punter shared a common goal, the intent to achieve that goal, and an agreement to achieve

it. *See Iglesias*, 535 F.3d at 156; *Bobb*, 471 F.3d at 495; *Gibbs*, 190 F.3d at 199–200.

2

A person is guilty of money laundering under § 1956 if, *inter alia*, he knowingly

uses the proceeds from some form of unlawful activity to conduct a financial transaction

with the intent to promote the carrying on of the unlawful activity or to conceal the true

character of the proceeds. *See* 18 U.S.C. § 1956(a)(1). To prove a conspiracy to commit

money laundering under 18 U.S.C. § 1956(h), the Government must show: "(1) that an

agreement was formed between two or more persons; and (2) that the defendant

knowingly became a member of the conspiracy." *United States v. Greenidge*, 495 F.3d

85, 100 (3d Cir. 2007).

In this case, Fawkes and Punter attempted to mask the drug proceeds through the

use of Western Union money orders. Furthermore, after they came to believe that their

repeated Western Union transactions would generate suspicion, they concealed the nature

and true owner of the drug proceeds by using others to send and receive the funds.

Fawkes provided Punter with the names of trusted associates who would receive the

Western Union wires and cash them for Fawkes. These transactions occurred approximately once per week for nearly two years. This evidence easily supports a conviction for conspiracy to commit money laundering.

D

The final argument is that Fawkes's sentence was procedurally and substantively unreasonable. We can find no basis to conclude that the District Court abused its discretion in sentencing Fawkes to a term of 200 months' imprisonment, a term 160 months less than the low end of the advisory United States Sentencing Guidelines range, followed by four years of supervised release. The District Court engaged in the three-step sentencing analysis we prescribed in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Furthermore, it followed the procedures announced in *Gall v. United States*, 552 U.S. 38, 50–51 (2007), by giving meaningful consideration to the pertinent sentencing factors embodied in 18 U.S.C. § 3553(a). If a sentence is procedurally sound, it is also considered substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Here, the District Court considered the sentence Fawkes was already serving for his previous cocaine and firearm convictions, and found that a lengthier sentence on the current convictions would not be beneficial or constructive to society. These considerations

11

cannot be said to be unreasonable.

## III

For the foregoing reasons, we will affirm the judgment of the District Court and grant counsel's motion to withdraw pursuant to *Anders*.