**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2036
_____

UNITED STATES OF AMERICA

v.

JAMAAL MARAGH,
                    Appellant

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-07-cr-00042-005)
District Judge: Honorable Anne E. Thompson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA, and VANASKIE, *Circuit Judges.*

(Filed: July 24, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Jamaal Maragh appeals his conviction of eight counts of money laundering in

violation of 18 U.S.C. § 1956(a)(1), challenging the sufficiency of the evidence on which

the jury could have found him guilty.  Because we conclude that a reasonable jury could

have found him guilty beyond a reasonable doubt, we will affirm the judgment of conviction.

I.

Since we write principally for the parties, we set forth only the facts essential to our analysis. Around 2001, Myron Punter began selling cocaine and crack cocaine in Alaska. He received the drugs via mail from the Virgin Islands, sent by one of Maragh's codefendants, Isaiah Fawkes, who grew up with Punter in the Virgin Islands. Initially, Punter would wire money or send money orders directly to Fawkes, but later, to avoid suspicion, Punter sent money to other individuals in the Virgin Islands for Fawkes. Fawkes provided the names of these individuals to Punter. In further attempt to avoid suspicion, Punter testified that he also employed others, including Leigh Bennett, Tonisha Wade, and his wife, Shonderi Punter, to send his payments from Alaska back to the Virgin Islands to persons identified by Fawkes. Punter also testified that Maragh was one of the individuals to whom he sent money. Over the course of a year, from December 15, 2001, to December 4, 2002, Marargh received Western Union transfers of $66,650 from several people, including Punter, Shonderi Punter, Bennett, and Wade.[1]

In June 2007, a grand jury indicted Maragh and seven other defendants on a number of counts, which included conspiracy to distribute cocaine, conspiracy to commit money laundering, and money laundering. Earlier charges against Maragh for conspiracy to commit money laundering, set forth in a 2005 indictment, ended in a mistrial. Because

---

[1] Maragh also received a transfer from a person with the name Lorna Parker. At trial, Wade testified that she used fake identification with Lorna Parker's name on it to transfer money at the request of Punter.

the 2005 conspiracy charges were premised on the same conduct at issue here, the District Court dismissed the conspiracy count in the 2007 indictment as to Maragh on double jeopardy grounds.[2]  Subsequently, Maragh and six other defendants proceeded to trial based on the charges in the 2007 indictment.[3]  The jury found Maragh guilty of eight counts of money laundering (Counts 30 to 37) and the District Court sentenced him to twenty-nine months' imprisonment, three years of supervised release, and a special assessment.

## II.

The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. § 1291.

Defendants challenging the sufficiency of the evidence must meet an "extremely high" burden.  *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008).  We will uphold Maragh's conviction "if the government's evidence would permit a reasonable jury to 'find the essential elements of the crime[s] beyond a reasonable doubt.'"  *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011) (quoting *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009)).  On such appeals, "we view evidence in the light most

---

[2] We previously affirmed the District Court's decision to limit the dismissal to the conspiracy to commit money laundering count. *See United States v. Maragh*, 456 F. App'x 181, 183 (3d Cir. 2012).

[3] Five of the other codefendants' appeals were joined: *United States v. Garcia*, No. 11-1999; *United States v. Allick*, No. 11-4305; *United States v. Alfred*, No. 11-4343; *United States v. Young*, No. 11-4344; and *United States v. Clouden*, No. 11-4522.  A panel of this Court has already affirmed the judgment of conviction and sentence of Fawkes. *See United States v. Fawkes*, No. 11-4580, 2013 WL 150216 (Jan. 15, 2013).

3

favorable to the government, mindful that it is the jury's province (and not ours) to make credibility determinations and to assign weight to the evidence." *Id.*

Maragh argues that the Government did not establish sufficient evidence on which a reasonable jury could have found him guilty of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i). To prove a defendant engaged in money laundering under that subsection, the government must establish:

> (1) an actual or attempted financial transaction; (2) involving the proceeds of [a] specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . knowledge that the transaction [was] designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of [a] specified unlawful activity.

*Richardson*, 658 F.3d at 337-38.[4] Maragh argues that the Government did not provide sufficient evidence to prove that he knew that the money he received was proceeds from unlawful activity and that the transactions were designed to conceal the nature or source of the proceeds.

---

[4] The original 2007 indictment charged Maragh with money laundering under both 18 U.S.C. § 1956(a)(1)(A)(i), which includes as an element the conducting of a financial transaction with the intent to promote the unlawful act, as well as § 1956(a)(1)(B)(i), which includes as an element the conducting of a financial transaction designed to conceal or disguise the nature or source of the unlawful activity. Subsequently, the District Court granted the Government's motion to, among other things, strike the "'promotion' language from the indictment." (*See* S.A. 4.) The motion indicated that the Government intended to rely solely on the conceal/disguise theory of § 1956(a)(1)(B)(i). Nevertheless, Maragh's judgment specifies the basis of the guilty verdicts for Counts 30 through 37 for money laundering as § 1956(a)(1)(A)(i). Based on the redacted indictment and the parties' submissions, we will assume the judgment's reference to § 1956(a)(1)(A)(i) is merely a scrivener's error.

4

Upon review of the totality of the evidence, we are not persuaded that a reasonable jury could not have found that the Government proved beyond a reasonable doubt that Maragh had the requisite knowledge to establish guilt under 18 U.S.C. § 1956(a)(1)(B)(i). Punter testified that he wired money from Alaska to the Virgin Islands for Fawkes, who supplied him with drugs. Punter also testified that he asked Shonderi Punter, Bennett and Wade to send money on his behalf to people identified by Fawkes as payment for drugs. Punter further testified that Fawkes supplied him with Maragh's name as one of the recipients for the wire transfers. The evidence also shows that Maragh received at least sixteen wire transfers from Alaska between December 15, 2001 and December 4, 2002, worth a total of $66,650. These wire transfers were sent by several individuals, including Punter, Shonderi Punter, Bennett, and Wade. From this evidence, a jury reasonably could conclude that the wire transfers were part of Punter's and Fawkes's drug trafficking scheme and were an attempt to conceal or disguise the unlawful source of the proceeds. The frequency with which Maragh received these money wires, the amounts of the wire transfers, and the varied identity of the senders could have also led a reasonable jury to infer that Maragh knew that he was receiving money from third parties in order to conceal the nature or source of proceeds of unlawful activity. In addition, while this evidence alone would sustain the verdicts against Maragh for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), a jury also reasonably could infer that Fawkes would not have supplied Punter with Maragh's name as a recipient for his money sixteen times over a year unless Maragh had been turning the money over to Fawkes. Such an inference would suggest that Maragh had the requisite knowledge that he was conducting financial

5

transactions involving proceeds of unlawful activity that were designed to conceal the nature or source of the proceeds. Accordingly, we find the Government put forth sufficient evidence to lead a reasonable jury to find Maragh guilty beyond a reasonable doubt of money laundering.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.