**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4305
_____

UNITED STATES OF AMERICA

v.

SHANGO ALLICK,
Appellant

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-07-cr-00042-003)
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA, and VANASKIE, *Circuit Judges.*

(Filed: July 30, 2013 )
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Shango Allick appeals his conviction of one count of conspiracy to commit money

laundering, in violation of 18 U.S.C. § 1956(h), and thirteen counts of money laundering,

in violation of 18 U.S.C. § 1956(a)(1).  Allick argues that because the money at issue in

the money laundering scheme—resulting from illegal drug sales—was gross receipts,

rather than profits, the money was not "proceeds" within the meaning of the money laundering statute in effect at the time of his indictment. We disagree. Accordingly, we will affirm the judgment of conviction.

I.

Since we write principally for the parties, we set forth only the facts essential to our analysis. Around 2001, Myron Punter began selling cocaine and crack cocaine in Alaska. He received the drugs via mail from the Virgin Islands, sent by one of Allick's codefendants, Isaiah Fawkes, who grew up with Punter in the Virgin Islands. Initially, Punter would wire money or send money orders directly to Fawkes, but later, in an attempt to avoid suspicion, Punter employed others to wire the money to other individuals in the Virgin Islands identified by Fawkes. Two such people employed by Punter were his wife, Shonderi Punter, and Tanisha Wade. A Government exhibit summarizing wire transfers received by Allick indicates that he received money from three individuals, including Shonderi Punter and Wade, totaling $20,499.

In June of 2007, a grand jury indicted Allick and seven other defendants on a number of counts. Allick was charged with one count of conspiracy to commit money laundering and thirteen counts of money laundering. After their indictment, Allick and six other defendants proceeded to trial.[1] The jury returned a guilty verdict on the one

---

[1] Five of the other codefendants' appeals were joined: *United States v. Garcia*, No. 11-1999; *United States v. Maragh*, No. 11-2036; *United States v. Alfred*, No. 11-4343; *United States v. Young*, No. 11-4344; and *United States v. Clouden*, No. 11-4522. A panel of this Court has already affirmed the judgment of conviction and sentence of Fawkes. *See United States v. Fawkes*, 510 F. App'x 183 (3d Cir. 2013).

count of conspiracy to commit money laundering and all thirteen counts of money laundering. The District Court sentenced Allick to thirty months' imprisonment, three years of supervised release, and a special assessment.

## II.

The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

To prove a defendant engaged in money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the government must establish:

> (1) an actual or attempted financial transaction; (2) involving the proceeds of [a] specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . knowledge that the transaction [was] designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of [a] specified unlawful activity.

*United States v. Richardson*, 658 F.3d 333, 337-38 (3d Cir. 2011) (quoting United States v. Omoruyi, 260 F.3d 291, 294-95 (3d Cir. 2001)). Relying on *United States v. Santos*, 553 U.S. 507 (2008), Allick's sole argument on appeal is that, at the time of his indictment, "proceeds" within the meaning of § 1956 meant net profits, rather than gross receipts. He asserts that the money Punter sent Fawkes was not profits from his drug sales, but, instead, was sent to cover the costs of the drugs Fawkes supplied Punter. Therefore, according to Allick, the Government failed to establish that he was involved in money laundering or conspiracy to commit money laundering because the money in question was not profits of the drug sales and, therefore, was not "proceeds" of unlawful activity under § 1956(a)(1)(B)(i).

3

In *Santos*, the Supreme Court reviewed the money laundering convictions of two defendants for their role in operating an illegal lottery. *Santos*, 553 U.S. at 509-10 (plurality opinion). At issue was whether "proceeds" under § 1956 applied only to profits of unlawful activity, rather than receipts. Finding the statutorily-undefined term ambiguous, a four-Justice plurality of the Court applied the rule of lenity, resulting in its conclusion that "proceeds" should be defined as "profits." *Id.* at 514. The plurality also explained that interpreting "proceeds" to mean receipts would create a "merger problem" because "nearly every violation of [an] illegal-lottery statute would also be a violation of the money-laundering statute." *Id.* at 515 (internal quotations omitted). The four dissenting Justices reached the opposite conclusion, concluding that "proceeds" meant "gross receipts," not profits, in all circumstances. *Id.* at 546 (Alito, J., dissenting). Concurring in the judgment, Justice Stevens agreed that receipts from an illegal gambling business were not "proceeds" within the meaning of the money laundering statute and agreed that such an interpretation would create a "merger" problem. *Id.* at 527-28 (Stevens, J., concurring in the judgment). But, Justice Stevens also concluded that, with respect to other types of unlawful activity, "proceeds" may encompass receipts when the legislative history so indicates, as in the case of the sale of contraband. *Id.* at 525-26, 528. Therefore, as Justice Alito noted, five Justices agreed that "proceeds" included receipts (rather than profits) from the sale of contraband.[2] *See id.* at 531-32 & n.1 (Alito, J., dissenting).

_____

[2] Section § 1956 now defines "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity,

4

Interpreting the splintered opinions of the Court in *Santos*, we have previously held that "'proceeds' mean[t] gross receipts in the circumstances" of a money laundering charge stemming from a defendant's use of drug trafficking money to purchase real estate. *See Richardson*, 658 F.3d at 340. In that case, we perceived no merger problem, and noted "the collective view of five justices" in *Santos* that "'proceeds' mean[t] gross receipts in cases involving the sale of drugs and other contraband" as "persuasive authority." *Id.* Additionally, we observed that "our sister circuits uniformly agree that 'proceeds' means receipts in the drug trafficking context—at least where (as here) there is no merger problem." *Id.* (collecting cases).

Here, there is no merger problem. Allick was charged with money laundering and conspiracy to commit money laundering for his role in receiving wire transfers as part of a plan to conceal the fact that the source of the money was a drug trafficking scheme. Therefore, based on *Richardson*, the Government was not required to prove that the money Punter had sent to Allick was profits of the sale of drugs in order for the jury to find him guilty of money laundering and conspiracy to commit money laundering.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

*including the gross receipts of such activity.*" 18 U.S.C. § 1956(c)(9) (emphasis added). At the time Allick was indicted, however, the term "proceeds" was undefined. Congress added the definition of "proceeds," which became effective May 20, 2009, after the Supreme Court's decision in *Santos*. Of course, the statutory definition does not apply here.

5